[S. F. Nos. 9295, 9296, 9297.   In Bank.—February 5, 1921.]

In the Matter of the Estate of HENRY L. VAN WYCK, Deceased.   LAWRENCE H. VAN WYCK, Appell·nt, v. UNION TRUST COMPANY OF SAN FRANCISCO, Respondent.

EDNA BOYD CALLAGHAN, Appellant, v. UNION TRUST COMPANY OF SAN FRANCISCO, Respondent.

UNION TRUST COMPANY OF SAN FRANCISCO, Appellant, v. LAWRENCE H. VAN WYCK et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—CONSTRUCTION OF WILL—MEANING OF WORD "GRANDCHILDREN."—Where a testator, leaving as his heirs at law a son and a daughter and two minor children of a deceased daughter, declared in the trust provisions of his will that it was his intention that when both of his children should die their descendants should take the *corpus* of the estate, and then in accordance with such expressed intention directed the trustees after the death of both of such children to pay the income to his grandchildren and to the lawful issue of any deceased grandchild until the youngest grandchild should become of the age of twenty-one years, when the trust estate was to be divided among the living grandchildren and the issue of any deceased grandchild, the word "grandchildren" had reference to the children of the son and daughter, and the minor children of the deceased daughter were omitted from the will and entitled to inherit one-third of the estate, as pretermitted heirs, under section 1307 of the Civil Code.

[2] TRUST—CONTINUANCE UNTIL MAJORITY OF TESTATOR'S YOUNGEST GRANDCHILD—SUSPENSION OF POWER OF ALIENATION.—A trust created by a will which provides that it shall continue until the youngest grandchild of the testator shall have become of the age of twenty-one years is void, as suspending the power of alienation for a longer period than that of the life of a person in being at the time of the testator's death, since the youngest grandchild would include a grandchild born after such death.

[3] ESTATES OF DECEASED PERSONS—WILLS—VALID AND INVALID PROVISIONS.—Where a will contains both valid and invalid provisions, the valid provisions will stand unless the provisions are parts of a single plan or scheme, or otherwise so dependent one upon the other that by avoiding the invalid provisions and allowing the valid provisions to stand there will result a disposition of the estate so different from what the testator contemplated or so

CLXXXV Cal.—4

unreasonable that it must be presumed that the testator would not have made the valid provisions if he had been aware of the invalidity of the others.

[4] ID.—TRUST CREATED BY WILL — INCOME TO CHILDREN OF TESTATOR FOR LIFE — DISTRIBUTION OF CORPUS UPON MAJORITY OF YOUNGEST GRANDCHILD OF TESTATOR—VALID AND VOID PROVISIONS INSEPARABLE.—Where a trust created by a will provided in one item that the trust should continue through the lives of the son and daughter of the testator with them as beneficiaries of the income, and in another item provided that upon the death of the survivor of them it should continue until the youngest grandchild of the testator reached the age of twenty-one years and then be divided among the surviving grandchildren and the issue of any deceased grandchild, the invalidity of the latter provision as suspending the power of alienation for a period not permitted by the statute invalidated the former provision, since the two provisions were so intimately connected and dependent one upon the other that the invalid provision could not be taken away without defeating the whole scheme and plan of the testator.

[5] ID.—TERMINATION OF TRUST—DEATH OF BENEFICIARY—DECREE OF DISTRIBUTION—ACCRUED INCOME TO HEIRS.—Where a trust provided for in a will directing payment of the income from a certain portion of the estate of the testator to the testator's sister for life terminated by her death before the making of the decree of distribution, the decree should not direct distribution upon the trust, but should distribute to the heirs or successors of the sister the income to which she was entitled between the death of the testator and her own. (On modification of judgment.)

APPEALS from portions of a decree of distribution of the Superior Court of the City and County of San Francisco. John T. Nourse, Judge. Affirmed and reversed.

The facts are stated in the opinion of the court.

Edwin H. Williams and R. M. F. Soto for Appellants in Nos. 9295, 9296.

J. W. Dorsey, W. E. Cashman and Heller, Powers & Ehrman for Appellant in No. 9297.

J. W. Dorsey and W. E. Cashman for Respondent in Nos. 9295 and 9296.

Morrison, Dunne & Brobeck and Edward Hohfeld for Respondents in No. 9297.

OLNEY, J.—Henry L. Van Wyck died testate December 3, 1917, leaving as his heirs at law a son and a daughter and two minor children of a deceased daughter by the name of Potter. His will was duly probated and his estate administered upon, and the executor, a trust company, petitioned in due course for distribution in accordance with the terms of the will. The two Potter children contested distribution in this manner, claiming that the will omitted to make provision for them and that it did not appear that such omission was intentional, so that under our statute they were pretermitted heirs and entitled as such to take one-third of the estate by way of inheritance. The son and daughter also each contested distribution in accordance with the terms of the will, claiming that the trust created by the will as to the residuum and bulk of the estate was void as suspending the power of alienation for a period not permitted by our statute. Upon these contests the probate court held that the Potter children were pretermitted heirs and entitled to one-third of the estate as such, but that the trust created by the will was valid, and made its decree of distribution accordingly. From the portion of the decree distributing one-third of the estate to the Potter children as pretermitted heirs, the Trust Company, which was both executor and trustee, appeals. From the portion distributing the residuum of the remaining two-thirds upon the trust created by the will the son and daughter each appeal.

The two questions presented are, then: First, are the Potter children pretermitted heirs under our statute? and, second, Does the trust created by the will suspend the power of alienation for a period not permitted by our statute? In case the second question is decided in the affirmative, a third question presents itself, namely, Is the trust wholly void or void only in part, and, if void only in part, what part is valid and what part void?

The statute as to pretermitted heirs is section 1307 of the Civil Code, which reads: "When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, has the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in the preceding section. . . ."

The statute as to the suspension of the power of alienation is sections 715, 716, and 771 of the same code, which reads:

"Sec. 715. Except in the single case mentioned in section seven hundred seventy-two, the absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than as follows:

"1. During the continuance of the lives of persons in being at the creation of the limitation or condition; or

"2. For a period not to exceed twenty-five years from the time of the creation of the suspension.

"Sec. 716. Every future interest is void in its creation which, by any possibility, may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed."

"Sec. 771. The suspension of all power to alienate the subject of a trust, other than a power to exchange it for other property to be held upon the same trust, or to sell it and reinvest the proceeds to be held upon the same trust, is a suspension of the power of alienation, within the meaning of section seven hundred and fifteen."

It should be noted that the present case does not come under section 772, and so does not come within the exception provided in section 715, and also that the second subdivision of section 715 (added by amendment in 1917) has no application. The question, then, as to the suspension of the power of alienation turns on whether or not the trust created by the will suspended that power for a possible period other than that of lives in being at the death of the testator.

The will to which these sections are to be applied, after making certain minor and immaterial provisions, reads:

### "ITEM V.

"I give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated, whereof I may die seized or possessed, or to which I may be in any manner entitled, or in which I may be interested at the time of my death to the extent of such interest, to my executor and trustee hereinafter named. "IN TRUST, NEVERTHELESS, AS FOLLOWS:

### "ITEM VI.

"To pay the whole of the net income of my distributive share of the estate of my grandfather, the same being a one-

fortieth undivided interest or thereabouts, to my said sister Eveline, if she survives me and so long as she shall live thereafter.

"ITEM VII.

"To pay the net income of every sort derived from my estate (excluding, while my said sister Eveline lives, if she shall survive me, that portion thereof above provided for her use), in equal shares to mv son Lawrence H. Van Wyck and my daughter Edna Boyd Callaghan if both shall survive me, or the whole thereof to the survivor if either shall predecease me; and to pay the whole thereof to the survivor when either shall die after my death.

"ITEM VIII.

"It is my intention that when both of my said children shall have died their or its descendants shall take the corpus of my estate, and that the lawful issue of any child or children of any deceased grandchild shall stand in the stead and take the place of its parent; accordingly, I will and direct said trustee, after the death of both of my said children, to pay the whole of the net income above provided for them and the survivor of them, to my grandchildren and to the lawful issue of any deceased grandchild by right of representation, share and share alike, until the youngest grandchild shall become twenty-one years of age, and then to divide among and deliver absolutely to my grandchildren then surviving and the lawful issue of any deceased grandchild by right of representation, in equal shares, all of my estate then remaining in the hands of my trustee.

"ITEM IX.

"I hereby nominate and appoint UNION TRUST COMPANY OF SAN FRANCISCO, the executor and trustee of this my last will and testament, and request that it shall be allowed to serve in each of said capacities, whether in the State of California or elsewhere, without giving any bond or security whatever.

"ITEM X.

"I authorize said executor and trustee, with the consent of both of my children, during the life of both, or with the consent of the survivor of them, and after the death of both, with the consent of a majority of my grandchildren, to sell any of my bonds, stocks, or other securities or properties of my estate, and with the proceeds arising therefrom to pur-

chase such other securities or properties as may seem most for the benefit of the beneficiaries herein provided for.

## "ITEM XI.

"I revoke all former wills and codicils by me ever made."

The two primary questions turn very largely, if not entirely, on the construction to be given to item VIII. There is nothing in the will indicating an intention to omit the Potter children, and, unless they are beneficiaries as "grandchildren" under item VIII, they are entirely omitted and entitled to inherit as pretermitted heirs. The claim of the Potter children is that by "grandchildren," as the word is used throughout the item, is meant only descendants of the son and daughter. Likewise as to the suspension of the power of alienation, the claim of the son and daughter is that under item VIII the trust is to continue after their deaths until the youngest grandchild reaches the age of twenty-one, and that the youngest grandchild may be one born after the testator's death, in which case the trust would continue for a period not dependent on the life of a person in being at the time of the testator's death.

It is to be noted that item VIII divides itself into two parts. There is first a declaration of the intention that when the son and daughter of the testator die, their descendants shall take the *corpus* of the estate. The will then goes on to say that, in accordance with the intention so expressed, the trustee shall pay the net income of the trust to the testator's grandchildren until the youngest becomes twenty-one, when the trust estate is to be divided among the living grandchildren and the issue of any deceased grandchild. If it were not for the preliminary declaration of intention, there could, of course, be no question but that the Potter children would come within the description "grandchildren." But it is also equally clear, we think, that, in view of the declaration to the effect that it is the descendants of the son and daughter whom the testator desires to take the *corpus* of the estate, and in view of the fact that the provision for the disposition of the property which immediately follows is expressly stated to be in accordance with this intention, the grandchildren, among whom the property is to be finally divided, are the descendants of the son and daughter and do not include the Potter children. This, in fact, is conceded. The claim is that, while the grandchildren whom the testa-

tor designates as the final recipients of the *corpus* of the estate are the descendants of the son and daughter alone, the grandchildren whom he designates as the recipients of the income after the death of the son and daughter and until the youngest grandchild is twenty-one are not so limited and include all the testator's grandchildren.

[1] We cannot so read the will. There is nothing whatever to indicate any distinction between the grandchildren who are to receive the *corpus* of the estate and those who are to receive the income. The direction for the payment of the income and the direction for the division of the *corpus* are parts of a single provision contained in a single sentence, and are locked together in such intimate fashion that it must be that the word "grandchildren" means the same thing throughout the sentence. Taking the will as a whole and reading it, we think it quite apparent that its plan and scheme was to provide for the son and daughter of the testator during their lives and for their descendants after their death, and for no one else. If the testator had in mind the children of any other child, it is hardly possible that he would have used the language he did or have failed to indicate that he had other grandchildren in mind than those he mentions. Furthermore, it is hard to see why, if the testator intended to make provision for the children of his deceased daughter, his sole provision for them should be that they should receive a share of the income of his property only after the death of his living son and daughter and before the arrival of his youngest grandchild at the age of twenty-one, on the happening of which event they were to have no further interest in the estate. In such a case, if either the son or daughter lived until the youngest grandchild became twenty-one, the Potter children would receive nothing. There would be no reason in a gift of income to minors for a postponed, limited and contingent period of this character. Our conclusion is that by the word "grandchildren," as used throughout the will, the testator meant always the same thing, and that that thing is stated in almost so many words to be the descendants of the son and daughter, and that no other construction of the will is reasonable or can be reconciled with its language. It follows that the Potter children were omitted from the will, and are entitled to take one-third of the estate by way of inheritance, and

that the portion of the decree of distribution so directing must be affirmed.

[2] The foregoing discussion has to a certain extent cleared the way for a construction of the will in connection with the question as to the suspension of the power of alienation. The provision is in effect that the trust shall continue "until the youngest grandchild shall become twenty-one years of age." If this means what it says, the testator's youngest grandchild, it would include a grandchild born after the testator's death, and the trust, if continued for the period contemplated by the testator, would continue for a period other than that of lives in being at the time of his death. We are not entirely clear as to the exact contention of the executor and trustee which would avoid this result, but it is apparently twofold.

It is, first, that by "youngest grandchild" the testator meant his youngest grandchild living at the time of his death, and did not refer to any grandchild that might be born after his death. This contention, we think, can be very easily tested. Certainly, when the testator provided that upon the death of his son and daughter it should be the duty of the trustee to pay the income to his grandchildren "until the youngest grandchild shall become twenty-one years of age and then to divide among and deliver absolutely to my grandchildren then surviving and the lawful issue of any deceased grandchild by right of representation in equal shares all of my estate then remaining in the hands of my trustee," he meant by the "youngest grandchild" the youngest of those grandchildren among whom the estate was to be divided on that grandchild reaching twenty-one. If, then, the youngest grandchild meant only the youngest of those living at the testator's death, excluding any born thereafter, it would follow that the estate should be divided only among those, or the descendants of those, living at the testator's death, and that all grandchildren that might be born after that time should be excluded from any share in the testator's estate. The result so reached as a necessary consequence of the construction contended for by the trustee demonstrates the impossibility of that construction. We think it is hardly open to argument but that the testator did not intend to exclude from the benefit of his estate such of his grandchildren as might chance to be born after his

death. No reason for any distinction between those born before his death and those born after appears, and the testator makes no such distinction. On the contrary, he uses the general expression "my grandchildren," and declares his intention that the descendants of his son and daughter should finally take the *corpus* of his estate without making any distinction whatever between such descendants. Reading the provision as a general one intended for the benefit of all the testator's grandchildren by his son and daughter, the provision is a natural and reasonable one. Reading it as a provision for such grandchildren only as should be born prior to the testator's death, it is an unnatural and unreasonable provision, and one contrary to the natural meaning of the language used. We think it certain, therefore, that by "youngest grandchild" the testator meant exactly what he said—his youngest grandchild, whether born before or after his death.

The second contention of the trustee is apparently that by virtue of the testator's declaration of intention that when both the testator's children should die their descendants should take the *corpus* of his estate, it must be held that immediately upon the son and daughter dying the beneficial interest in the *corpus* would vest in their descendants, the trust to continue until the youngest grandchild reaches twenty-one merely as a trust to pay to those same beneficiaries the income of the estate, the *corpus* of which has already vested in them. The claim seems to be that if this is the character which the trust will assume upon the death of the son and daughter, then, although the trust term as contemplated by the testator would endure beyond that time and for a period not permitted by the statute, yet the trust does not offend the statute, for the reason that a trust merely to pay income to those already vested with the principal is a vain thing and may be terminated at any time at the desire of the beneficiaries, or, at least, may be terminated by the trustee and the beneficiaries jointly. We need not examine into the question of whether a trust of the character so assumed may or may not be terminated contrary to the expressed intention of the trustor at the instance of the beneficiaries alone or of the beneficiaries and the trustee jointly. It is manifest that, unless it is true in this case that upon the death of the testator's son and daughter those who

are to take the *corpus* of the property are then determined and in being, the whole contention of the trustee falls. Putting it in another way if those who are to take the *corpus* of the testator's estate are not then determined and in being, it is plain that all those whose interests must be acquired for a complete alienation are not then in being, and the power of alienation is necessarily still suspended. The question then is, Is it true that under the will those who are to take the *corpus* of the estate are persons determined and in being at the time of the death of the son and daughter?

The correct answer to this can, it seems to us, be easily determined by inquiring as to what would be the right of the child of a grandchild who was living when the son and daughter died but who died before the youngest grandchild reached twenty-one. Would such great-grandchild of the testator have a right to share as an immediate beneficiary in the division of the estate when the youngest grandchild became twenty-one, or could he share only as the heir or successor of his deceased parent? Putting it in another way, would such a person have a right to share in the division because of his character as the child of a deceased grandchild, or would he share only as the legal successor to the interest of his parent? If he shares in the latter capacity, it is evident that the parent might alienate his interest so that his child would take nothing. If he shares, however, because of his character as child of a deceased grandchild, his interest cannot be alienated except by himself. In the latter case, since it is possible that he be born after the death of the testator's son and daughter, it is evident that upon their deaths all persons necessary for a complete alienation may not be in being, and the power of alienation will still be suspended.

The terms of the will leave no doubt upon this point. They are that it shall be the duty of the trustee, after the death of the son and daughter, to divide the income as directed "until the youngest grandchild shall become twenty-one years of age, and *then* to divide among and deliver absolutely to my grandchildren *then* surviving and the lawful issue of any deceased grandchild by right of representation" the principal of the estate. The second "then" italicized in the quotation just made plainly refers back to the first "then," and that in turn plainly refers to the time when

the youngest grandchild becomes twenty-one, and not to the time when the son and daughter of the testator die. In other words, the persons among whom the estate is to be divided upon the youngest grandchild becoming twenty-one are the grandchildren surviving at that time and the lawful issue of any grandchild who did not survive until that time. This means, of necessity, that the child of such a deceased grandchild is entitled to share in his character of lawful issue of a deceased grandchild of the testator and as an immediate beneficiary designated by the will, and not merely as the heir or other successor of his parent. It follows that if, after the death of the testator's son and daughter but before the youngest grandchild had reached twenty-one, all of the beneficiaries under the will should unite in an alienation, the alienation would not be complete, since there would still be outstanding the possible interest of any child born thereafter to a grandchild then living and joining in the alienation but who should die before the arrival of the time provided by the will for division. Under the will, then, it is possible that, upon the death of the testator's son and daughter, the trust must continue with the power of alienation suspended until the youngest grandchild reaches twenty-one, since it may not be possible to determine sooner who is entitled to receive the *corpus* of the estate; that such, in fact, will be the situation if more than one grandchild survives the son and daughter. The possible period, therefore, during which the power of alienation may be suspended extends to the time when the youngest grandchild reaches twenty-one, and since such grandchild may be one born after the death of the testator, such period is other than one for the lives of persons in being at the time of the creation of the trust, and the trust comes within the prohibition of the statute.

The vital point in the foregoing line of reasoning is, of course, the construction which we have put upon the will to the effect that upon the youngest grandchild reaching the age of twenty-one, it is the grandchildren then surviving and the issue of any deceased grandchild among whom the property is to be divided. This construction, it seems to us, is plainly necessitated by the testator's use of the word "then" previously referred to. Counsel for the trustee recognize the decisive character of this word and contend that it re-

fers, not to the time of the youngest grandchild reaching the age of twenty-one, but to the time of the death of the testator's son and daughter. Their argument is that the opening words of item VIII, "It is my intention that when both of said children shall have died their or its descendants shall take the *corpus* of my estate, and that the lawful issue of any child or children of any deceased grandchild shall stand in the stead and take the place of its parent," are more than a declaration of intention as we have termed them, and are words of gift, effective to vest the *corpus* of the estate in the persons designated immediately upon the death of the testator's children, and that the word "then" must be taken to refer to this time, since otherwise there would be a gift of the principal to certain persons in existence at a certain time and a provision for division of the principal at a later time among persons who might not be the same. This argument wholly overlooks the connection in which the word is used. The provision containing it is, to repeat, that it is the duty of the trustee, after the death of the testator's children, to divide the income "until the youngest grandchild shall become twenty-one years of age and *then* to divide among and deliver absolutely to my grandchildren *then* surviving and the lawful issue of any deceased grandchild, etc.," the *corpus* of the trust estate. It does not seem to us possible to read this language in any other way than that the word "then" in both instances refers to the time when the youngest grandchild becomes twenty-one. To justify any other construction, the intent of the testator to the contrary would have to appear so clearly and unmistakably as to warrant the conclusion that the use of the word "then" as it occurs in the will was through inadvertence or mistake and should be disregarded. The only thing relied upon to warrant such a conclusion is the declaration that it is the testator's intention that when both his children die their descendants shall take the *corpus* of his estate. But we cannot agree with the contention that this declaration was intended as effective words of gift. While, if it had stood alone, there would be no doubt but that it was so intended, it does not stand alone. As the will reads, the testator first declares his intention, and then goes on to direct particularly what shall be done "accordingly," that is, to accomplish the intention expressed. There is, it seems to

us, but one rational construction, and that is that the testator first declares his general intention, not intending such declaration as in itself an operative provision, and then goes on to say just what he wishes done in that behalf. It is the latter portion that is the operative portion of this item of the will, and if there is any inconsistency between the general declaration of intention and the particular provisions as to what shall be done, it is the latter that must govern. There is, however, no inconsistency in fact. The descendants of the testator's son and daughter do take the *corpus* after their death under the subsequent particular provisions. The only difference is that the general statement of intention omits to mention the somewhat minor fact that they are not to take at once, but only upon the youngest grandchild reaching twenty-one, and that in the meantime they are to receive only the income of the property.

The trustee also contends that the case is at most one of alternative limitations, one of which is bad but the other valid and that the rule in such cases is that the invalidity of one alternative will not affect the other. It is said that the case is one of alternative limitations because whether the period of suspension of the power of alienation provided by the will will or will not in fact be for other than the lives of persons in being depends on whether the youngest grandchild proves to be one born after or one born before the testator's death. But such a case is not one of alternative limitations. There is but one limitation, namely, that the trust shall remain intact with a consequent suspension of the power of alienation until the youngest grandchild reaches twenty-one. This event may or may not happen within the lives of persons in being at the testator's death, and therefore the period fixed is a period not measured by the lives of such persons and is not permitted by the statute.

The conclusion so reached necessitates a consideration of how far the invalidity of the trust goes. Manifestly, the trust is void as to the period after the death of the son and daughter. Is it void for the period of their lives as well? The question is one of separability. The provision that the trust shall continue through the lives of the son and daughter, with them as beneficiaries of the income, and the provision that upon the death of the survivor of them it shall continue until the youngest grandchild reaches twenty-one

and then be divided among the surviving grandchildren and the issue of any deceased grandchild are stated in separate items of the will. This, however, is by no means determinative. [3] The real question presented where a will contains both valid and invalid provisions is whether the two are so parts of a single plan or scheme or otherwise so dependent one upon the other that by avoiding the invalid provisions and allowing the valid to stand there will result a disposition of the estate so different from what the testator contemplated or so unreasonable that it must be presumed that the testator would not have made the valid provisions if he had been aware of the invalidity of the others. The rule in fact is frequently stated more strongly against allowing the valid provisions to stand than we have just stated it. Thus, in *Estate of Fair*, 132 Cal. 540, [84 Am. St. Rep. 70, 60 Pac. 549], it is said: "The question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator. In *Darling* v. *Rogers*, 22 Wend. (N. Y.) 495, Senator Verplanck correctly stated the rule as follows: 'When a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate as, from the whole testament taken together, was evidently never the design of the testator. Otherwise, when a good part is so far independent that it would have stood had the testator been aware of the invalidity of the rest.' "

[4] Applying this test to the present will leaves little doubt as to the correct conclusion. If the trust in this case is invalidated only for the period subsequent to the death of the son and daughter, the period as to which it offends the statute, it means that the trust must terminate on the death of the survivor of the son and daughter, as the beneficial life tenants, with remainder over free of the trust, and that as to this remainder the testator has died intestate, so that it vested immediately upon his death in his heirs. But his son and daughter are his heirs as to the portion of the estate given in trust, so that we would have the very anomalous situation of the same people owning both the beneficial life estate in the property and also the remainder over in fee after the termination of the life estate, but with the life

estate and the remainder in fee kept from merging by the interposition of a trust. The trust under such circumstances would accomplish nothing and would be practically futile. The son and daughter could alienate as they pleased both their beneficial life estate and the remainder in fee, so that the trustee might come to manage the property and preserve it intact for the benefit solely of strangers to the testator. If the son and daughter did not alienate the property during their lives, they could dispose of the future remainder vested in them by will so that it would not go to their descendants as the testator intended, or if it did, would be divided very differently than as he directed. Moreover, if they died intestate, and the remainder went to their heirs, it would not necessarily go to their descendants exclusively, as the testator desired, for their descendants might not be their only heirs. They would not be, if either son or daughter left a spouse surviving, and it is worthy of note that the son is married and his wife is living. There can be no presumption that if the testator had known of the invalidity of the portion of the trust which offends the statute, he would yet have wished the trust to stand for the lives of his son and daughter, futile and unreasonable as long as it should stand, and upon its termination resulting in the property very possibly going to others than those to whom he desired it should go. The presumption is quite the contrary. In other words, it appears that the valid and invalid portions of the trust which the testator attempted to create are so intimately connected and so dependent one upon the other that the invalid portions cannot be taken away without the whole scheme and plan of the testator falling. The trust must therefore be declared invalid *in toto*.

This conclusion is supported by the authority of *Estate of Whitney,* 176 Cal. 12, [167 Pac. 399], where a trust identical in all material respects with that under consideration was involved and was held both to offend the statute as to the suspension of the power of alienation and to be void *in toto,* for reasons which we have in effect but repeated here.

What we have said as to the trust being void *in toto* has, of course, reference only to the trust for the son and daughter and their descendants. It has no reference to the trust created by item VI as to a part of the property for the benefit of a sister of the testator. The provision for her

benefit is not a part of the testator's general scheme for the disposition of his estate, and is very evidently a provision the making of which would not have been affected had the testator known of the illegality of the provision he was making for his children and their descendants.

The portion of the decree distributing one-third of the estate to the Potter children as pretermitted heirs is affirmed. The portion of the decree distributing a part of the estate to the Union Trust Company of San Francisco in trust is reversed, with direction that in lieu thereof distribution of that part be decreed as follows: The portion specified in item VI of the will to said Trust Company for the life of the sister of the testator named in said item and upon the trust therein declared, with remainder over to the son and daughter of the testator; and the balance to the son and daughter absolutely.

Angellotti, C. J., Shaw, J., Wilbur, J., Sloane, J., Lawlor, J., and Lennon, J., concurred.

The foregoing opinion was modified by the court on March 7, 1921, as follows:

THE COURT.—[5] Since the rendition of the foregoing opinion it has been brought to our attention that while the decree appealed from directs distribution to the Union Trust Company upon the trust provided by item VI of the will, the section providing for the sister of the testator, which trust we hold to be valid, as well as upon the trusts provided in the other sections of the will which we hold to be invalid, the testator's sister had died subsequent to his death but before the making of the decree, and that that fact is found by the decree of distribution itself. The result was, of course, that the trust provided for in item VI had terminated before the making of the decree, and the decree should not have directed distribution upon that trust, but should merely have distributed to the heirs or successors of the sister the income to which she was entitled under item VI between the death of the testator and her own. Misled by the decree, the incorrect character of which in this respect was not called to our attention, we directed distribution to the trustee named upon the same trust. This error in the decree, also,

should be corrected. It is therefore ordered that our judgment be modified to read as follows:

"The portion of the decree distributing one-third of the estate to the Potter children as pretermitted heirs is affirmed. The portion of the decree distributing a part of the estate to the Union Trust Company of San Francisco is reversed, with direction that in lieu thereof distribution be made to the heirs or successors of the testator's sister, Eveline, of the income of the portion of the estate as to which a trust is declared in her favor by item VI of the will for the period between the testator's death and hers, and that the remainder of the two-thirds of the estate not distributed to the Potter children be distributed to the son and daughter of the testator equally."

All the Justices concurred.

Rehearing denied.

All the Justices concurred.