[Civ. No. 21277.   First Dist., Div. Two.   Dec. 11, 1963.]

Estate of HELENE L. DESMOND, Deceased.   RUTH M. LONGSHORE, Plaintiff and Appellant, v. WILLIAM L. DESMOND, as Executor, etc., et al., Defendants and Respondents.

W. M. Pinney, Jr., for Plaintiff and Appellant.

Rockwell, Fulkerson & Clarke, Harold H. Fulkerson, Jerome A. Duffy, Dubsick & Helon and Marvin E. Helon for Defendants and Respondents.

TAYLOR, J.—This is an appeal from a judgment denying the appellant's petition to revoke probate of her mother's will. The only question is the sufficiency of the evidence to support the findings and conclusions of the court below.

Helene L. Desmond died on May 28, 1959, leaving a holographic will dated August 31, 1951, which was admitted to probate on September 17, 1959. The chief beneficiary is the respondent, William L. Desmond, one of the sons of the decedent and the executor named in the instrument. The other beneficiaries are the remaining adult children of the deceased and three of her ten minor grandchildren. Joseph F. Desmond, the other son, filed his petition for revocation of probate and was joined therein by his sister, Ruth M. Longshore, the sole appellant herein. ▉ The contestants alleged that the document admitted to probate was not a valid testamentary instrument in that it was a conditional will, the condition of which was never fulfilled, making the instrument inoperative and invalid.

The matter was heard by the court sitting without a jury. After hearing all of the evidence, the court made, among others, a finding of fact that the deceased did not intend to use certain language in the instrument as a condition precedent to the effectiveness of the document but as an expression of inducement and entered its judgment denying the petition to revoke probate. This appeal ensued.

The disputed language in the document dated August 31, 1951, reads as follows: ''The enclosed should convey my wishes of disposition to be made of any and all of my personal and tangible possessions in case I should have a mishap and not return due to some unforeseen accident'' and ''My last will and testament before leaving on a short trip.''

The document was written, dated and signed by the deceased prior to a trip to the eastern part of the United States taken in 1951. Just before leaving, the deceased delivered the document to her other daughter, Patricia Fitzgerald, one of the respondents herein. Upon her return from the trip, the deceased took back the document and retained exclusive possession thereof until her death. On May 9, 1959, before leaving her San Francisco residence, the deceased placed the document just inside the safe in her desk in her bedroom. The document was placed on its edge with the face of the envelope facing the door of the safe in a striking, arresting position immediately observable to anyone opening the safe.

Appellant contends that the instrument admitted to probate is expressly conditional on its face and that the evidence was insufficient to support the finding to the contrary. ▉ Whether an instrument is a conditional will (Prob. Code, §§ 24, 142) depends on the language used by the de-

ceased and her intention in using it. ▆ The cardinal rule is that a will must be construed according to the intention of the testator (Prob. Code, § 101; *Estate of Salmonski*, 38 Cal. 2d 199 [238 P.2d 966]) and that effect must be given to the expressed intention so far as possible to avoid intestacy (Prob. Code, § 102; *Estate of Cuneo*, 60 Cal.2d 196 [32 Cal.Rptr. 409, 384 P.2d 1]; *Estate of Sewall*, 14 Cal.App.2d 554 [58 P.2d 744]). ▆ The fact that the deceased left a will implies that she did not intend to die intestate *(Estate of Taylor*, 119 Cal.App.2d 574, 581 [259 P.2d 1014]).

▆ To establish a condition, the will must contain language which clearly indicates a purpose to limit its operation and is not to be deemed conditional when it can reasonably be held that the testator in using the language in question was merely expressing his motive or inducement to make the will *(Estate of Moulton*, 176 Cal.App.2d 87, 90 [1 Cal.Rptr. 407]; *Estate of Del Val*, 159 Cal.App.2d 602, 604 [323 P.2d 1011]; *Estate of Taylor, supra)*.

▆ The circumstances which the court may take into consideration in determining whether the deceased regarded the contingency as relating to the motive inducing the making of the will, rather than as a condition, differ in each case, but include in addition to the language in context, the circumstances surrounding the execution of the document and its delivery; the testator's state of health; his plans for the future; the preservation of the document, particularly after the contingency has failed; instructions upon delivery; subsequent declarations of the testator; lack of another subsequent will; lack of alternative disposition of the property and the amount of the estate disposed of by the instrument *(Estate of Taylor, supra)*.

▆ Extrinsic evidence is admissible to show whether the testatrix intended to make an absolute or a conditional will *(Estate of Taylor, supra*, at p. 582). ▆ The evidence here indicated that within a few days after her return from the 1951 trip, the deceased asked her daughter Patricia to return the envelope labeled "Last Will and Testament," containing the disputed document. When Patricia returned the will, the deceased indicated it was a matter of importance and would be put away and took the document to her bedroom.

About a year after the execution of the document, the deceased was upset about the marriage of her son William and stated that she was going to change her will. Subsequently, the deceased made a statement that she had made her will

and that "everything was arranged." On other occasions, she asked both of her sons to help her in arranging the disposition of her estate and indicated that she planned to leave everything to her grandchildren. Shortly before her death, the deceased told Patricia that she had finally gotten all of her affairs in order. The sister of the deceased testified that she had been told of another will but no other testamentary document was ever found.

From the time the deceased took the envelope back from Patricia in 1951, no one saw the envelope containing the document or knew of its contents until its discovery on the morning after her death. Several of the children had access to the safe and only a few weeks before, William had thoroughly searched the safe for a deed. Appellant's contention that the decedent did not retain the will and that a subsequent instrument was destroyed by William finds no support in the evidence.

On May 9, 1959, less than three weeks before her death, the decedent was in her bedroom for the last time, prior to going to a convalescent hospital to recover from her heart attack. She asked William to open the safe. When he returned, the safe was closed and locked. The safe was next opened after her death and the envelope containing the document found propped up on edge. From this evidence, the trial court properly inferred that the deceased was aware of her impending death and placed the document where it would easily be found.

Appellant's contentions concerning the deceased's inconsistent declarations that she had no will and planned to leave everything to her grandchildren are not properly addressed to this court. █ It is the exclusive function of the trial court to weight the evidence, resolve conflicts and determine the credibility of the witnesses (*Page* v. *Principe*, 220 Cal. App.2d 151 [33 Cal.Rptr. 836]) and if its interpretation thereof is reasonable, a reviewing court will not disturb the trial court's determination in the matter unless an abuse of discretion is clearly shown (*Estate of Sullivan*, 86 Cal.App.2d 890 [195 P.2d 894]). █ The same is true of the significance of the fact that several items mentioned in the 1951 document were no longer in existence[1] at the time of her death, that the number of her grandchildren had increased

---

[1]There was no Pepsi-Cola or Menesco stock; the $2,000 life insurance policy and Galena property had been sold; Aunt Jules and Roger predeceased the testatrix.

from three to ten, and the various disagreements and reconciliations between the deceased and her four children. A substantial portion of the law of wills is a reflection of the human failures in keeping testamentary documents up to date with rapidly changing family circumstances (Prob. Code, §§ 90, 92; 4 Witkin, Summary of Cal. Law, Wills and Probate, §§ 143-155, pp. 3135-3147).

We conclude that there was substantial evidence to sustain the trial court's finding that the testamentary disposition was unconditional.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.